FILED

```
           UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF ALABAMA
              NORTHEASTERN DIVISION        02 SEP 20 PM 4: 42

                                              U.S. DISTRICT COURT
                                              N D OF ALABAMA
REP, INC.,                        )
                                  )
      Plaintiff,                  )
                                  )
vs.                               )    CV 01-B-2285-NE
                                  )
VIASYSTEMS, INC.,                 )
                                  )                ENTERED
      Defendant.                  )
                                                   SEP 20 2002
```

## MEMORANDUM OPINION

This action is currently before the court on plaintiff's Motion for Partial Summary Judgment and plaintiff's Motion to Dismiss. Plaintiff, Rep, Inc., alleges defendant, Viasystems, Inc., breached its contract with plaintiff and violated the Alabama Sales Representative's Commission Contracts Act, Ala. Code §§ 8-24-1, *et seq.*, by failing to pay plaintiff commissions according to the terms of their Agreements. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that plaintiff's motion for partial summary judgment and its motion to dismiss are due to be granted.

## I. FACTUAL SUMMARY

Defendant is engaged in, among other things, the business of manufacturing, producing, importing, and distributing printed circuit boards for sale. (Doc. 29, Ex. A ¶ 5.) From March 1998 until May 8, 2001, plaintiff served as a manufacturer's sales representative for defendant, soliciting orders from customers for the wholesale purchase of defendant's

39

products. (*Id.* at ¶ 3.) Each year plaintiff and defendant entered into a separate representative Agreement, which set forth the rights, responsibilities, and obligations of the parties. (Doc. 29, Exs. B, C, D.) Pursuant to the Agreements, defendant agreed to compensate plaintiff by paying it a percentage of the dollar amount of orders or sales solicited on defendant's behalf as a sales commission. (Doc. 29, Ex. A ¶¶ 6, 8.)

The 1998 and 1999 Agreements contain the following language:

### 8. Commissions

Viasystems agrees to pay, and the Representative is entitled to receive remuneration solely in the form of sales commissions. These commissions are the compensation for servicing accounts, engineering assistance, and all other efforts rendered by Representative in obtaining orders entered during the term of this Agreement and all other functions of Representative in connection with Agreement. . . .

    (a) **Determination of Commissions**

Eligibility for commissions is determined at the time of acceptance of orders by Viasystems. The Representative and Viasystems agree that in unusual competitive situations, a commission rate lower than those set out [in the Agreement] may be negotiated prior to the acceptance of orders.

    (b) **House Accounts**

Commissions will be paid to Representative with respect to sales to newly designated House Accounts only on orders shipped prior to the expiration of the notification period specified in Clause 6. No other compensation shall be owing by Viasystems to the Representative with respect to such House Accounts.[1]

---

[1]Clause 6 states:
    Viasystems hereby authorizes the Representative to solicit business on its behalf from all accounts including original equipment manufacturers (hereinafter referred to as "OEM's") within the Territory except those designated as "House Accounts", as listed in Appendix C.

(c)  **Split Commission**

Viasystems will pay split Commissions to Representatives involved in multi-territory sales activities. These splits will normally be made by assigning a proportion of the total commission payable to each Representative involved in an account program where Product is designed in one Territory and delivered to another Territory. . . .

. . .

Split Commissions based on split sales credit allocations are determined on an individual program basis between involved Representatives. Procedures to follow on split commissions shall be outlined by Viasystems and copy of such outline shall be supplied to Representatives.

(Doc. 29, Ex. B at 2-3; Ex. C at 2-3 (footnote added).) The 2000 Agreement is identical with the exception of the section 8(c), which deletes the language "between involved Representatives." (Doc. 29, Ex. D at 2-3.)[2]

The Agreements provide for changes in the commission rates; the Agreements state:

(e)  **Commission Rate Changes**

The Commission rates referred to herein may be changed in the following ways:

1. By mutual agreement of the parties.

---

Viasystems maintains the right to designate any account as a House Account. Such designations shall be effective upon ninety (90) days' written notification to Representative. No commissions will be paid Representatives with respect to sales to said account except as provided in Clause 8(c).

[2]The 2000 Agreement also contains slightly different language in section 6 regarding "House Accounts." The 2000 Agreement limits commissions paid on certain, identified "Target Accounts," and states that commission will be paid on target accounts only for certain products sold. (Doc. 29, Ex. D at 2.)

3

>   2. Viasystems reserves the right to change and or modify, at its sole discretion, the commission split percentage on specific orders. Any such change to the commission split percentage will be given by Viasystems to Representative sales management prior to acceptance of the order.
>
>   3. Viasystems reserves the right to change from time to time as market and customer demands dictate the earned commission percentage on specific customer orders. The new commission rate will be given to Representative by written notice, prior to placement of purchase order by customer.

(Doc. 29, Ex. B at 4, Ex. C at 3, Ex. D at 3-4.) The Agreements also provide for "commission adjustments" for cancelled orders, returns, or uncollectible sales. (Doc. 29, Ex. B at 4, Ex. C at 4, Ex. D at 4.)

In 1996, defendant took over the in-house circuit board production business of Lucent Technologies. (Doc. 32, Ex. 2 at 27.) As part of its agreement with defendant, Lucent agreed to purchase a certain amount of product from defendant. (*Id.* at 87.) At some point, Lucent exhausted its production capacity and had defendant ship its product to two manufacturing facilities – Avex and Solectron – instead of shipping the product directly to Lucent. (*Id.* at 86-88.) Avex and Solectron were in plaintiff's territory. (*Id.* at 86; doc. 29, Ex. C at 11.) Under the terms of the 1999 Agreement, plaintiff was entitled to a commission on these shipments, (*see* doc. 29, Ex. C at 3), and defendant paid plaintiff a commission, at the full contract rate, (*see* doc. 32, Ex. 2 at 201-02).

Defendant contends that the commission paid on the Avex and Solectron transactions should have been "split" between plaintiff and defendant. (*See* Def.'s Br. at 4-5.) Sometime after the commissions were paid to plaintiff, defendant notified plaintiff that it was deducting

4

the alleged over-paid commissions on the Avex and Solectron transactions and that it would reduce future commission payments to plaintiff as a "payback." (Doc. 29, Ex. H.) Over the next several months, defendant withheld commission payments totaling $124,541 as a payback or recoupment of the alleged over payment of the commissions on the Avex and Solectron transactions. (Doc. 29, Ex. A ¶¶ 17-20.) Defendant does not dispute plaintiff's calculation of the amount withheld as a payback.

By letter dated February 8, 2001, defendant terminated plaintiff as the sales representative for defendant. (Doc. 29, Ex. A ¶ 9.) At that time, however, commissions on certain completed transactions involving Siemens, CMC and Adtran, totaling $201,701.26, were earned but not paid.

During years 2000 and 2001, plaintiff solicited $4,397,234.03 in sales from Siemens. (Doc. 29, Ex. A ¶ 16, Ex. E.) Defendant paid plaintiff commissions on only $120,206 of these sales; it failed to pay commissions on the balance of $4,277,028.03. (Doc. 29, Ex. A ¶ 16.) Accordingly, based upon the parties' agreed-upon 2.5% commission rate for the products sold to Siemens, defendant owes plaintiff commissions of $106, 925. (*Id.*)

Plaintiff solicited $6,031,240.68 in sales from CMC in 2000 and 2001. (*Id.*; doc. 29, Ex. F.) Defendant paid plaintiff commissions on $2,283,545 of these sales; it failed to commissions on the balance of $3,747,695. (Doc. 29, Ex. A ¶ 16.) Accordingly, based upon the parties' agreed-upon 2.5% commission rate for the products sold to CMC, defendant owes plaintiff commissions of $93,692.39. (*Id.*)

5

During years 2000 and 2001, plaintiff solicited $793,825 in sales from Adtran. (*Id.*; doc. 29, Ex. G.) Defendant paid plaintiff commissions on $750,470 of these sales; it failed to pay commissions on the balance of $43,355. (Doc. 29, Ex. A ¶ 16.) Accordingly, based upon the parties' agreed-upon 2.5% commission rate for the products sold to Adtran, defendant owes plaintiff commissions of $1083.87. (*Id.*)

Defendant does not dispute the amounts calculated by plaintiff.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the

drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

#### A. Breach of Contract

Plaintiff contends that defendant breached the parties' contract by failing to pay certain earned commissions and by unilaterally deducting the so-called payback amount. The Agreements at issue contain a choice of law provision, stating that the contract shall be interpreted according to Missouri law. (Doc. 29, Ex. D at 10.) To prevail on a claim for breach of contract under Missouri law, a plaintiff must demonstrate: "(1) [M]utual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5) damages resulting from the breach of the contract." *Brickey v. Concerned Care of Midwest, Inc.*, 988 S.W.2d 592, 594 (Mo. App. E.D. 1999)(quoting *Muir v. Ruder*, 945 S.W.2d 33, 36 (Mo. App. E.D. 1997).

##### 1. The "Payback" Issue

Plaintiff contends that it is entitled to certain commissions withheld as a unilateral deduction by defendant under the guise of a "split" commission between plaintiff and defendant and that defendant's deduction of these commissions is a breach of contract.

7

The court agrees. Defendant contends that its so-called paybacks were based on a "split" commission with plaintiff. However, the court fails to see how a commission that is reduced or only partially paid is a "split" commission. The commissions paid by defendant to a representative or representative is a percentage of total sales volume received by defendant.[3] The term "split," given its ordinary meaning, indicates a division of the whole. Therefore, a split commission would indicate that the percentage of the total sales volume, paid by defendant, is divided among representatives. If the defendant pays a smaller percentage of its sales volume as commission (thus, keeping a larger percentage for itself), this is a reduction or adjustment of the whole commission, not a division or "split" of the commission.

Therefore, the court holds that defendant cannot "split" a commission between itself and a representative or representatives. Any portion of the commission percentage retained or recouped by defendant is a reduced or adjusted commission.

The 1999 Agreement specifically allows defendant to reduce, adjust, or exclude commissions under certain circumstances.[4] However, the Agreement does not allow

---

[3] "A commission is 'a fee paid to an agent or employee for transacting a piece of business or performing a service.'" *Gubernik v. Han-Dee Pak*, 668 S.W.2d 574, 579 (Mo. App. E.D. 1984)(citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, p. 457).

[4] For example, defendant could have excluded some sales from House Accounts and could designate an account as a House Account with 90 days written notice to the representative. (Doc. 29, Ex. C at 2.) Moreover, defendant could change commission rates with notice to the representative prior to placement and/or acceptance of an order. (*Id.* at 3.) Further, defendant could adjust commission after it paid the representative for product returns, uncollectible sales, and canceled orders. (*Id.* at 4.)

8

defendant to recoup paid commissions based on its unilateral determination that a smaller percentage commission should have been established for the Avex and Solectron accounts. This unilateral, post-transaction reduction of the commission rate is not allowed under the plain language of the contract.

The court finds that defendant breached its contract with plaintiff by deducting a "payback" of earned commissions. The court finds that defendant improperly deducted $124,541 as a payback of paid commission. Therefore, plaintiff's motion for summary judgment as to the paybacks is due to be granted.

### 2. Sales to Siemens, CMC and Adtran

Plaintiff has presented evidence that defendant failed to pay commissions that plaintiff had earned on sales in 2000-2001 to Siemens, CMC, and Adtran, totaling $ 201,701.26. Defendant has offered nothing to dispute plaintiff's claim related to these earned, yet unpaid, commissions.[5] Therefore, plaintiff's motion for summary judgment is due to be granted as to plaintiff's claim for unpaid commissions under the 2000 Agreement.

Based on the foregoing, the court finds that defendant improperly failed to pay plaintiff $201,701.26 in commissions for sales to Siemens, CMC, and Adtran during 2000

---

[5]Defendant asserts, apparently, that this underpayment was the result of a "split" commission under the terms of the 2000 Agreement with plaintiff. (Def.'s Br. at 11-12.) However, defendant does not cite the court to any evidence to support its assertion. *See id.* Defendant argues that these reductions were based on its "split" of the commissions on these accounts. However, as set forth above, these reductions in the percentage of sales paid as commissions was not a "split" of the commission; rather it was a reduction of the commission. Nothing argued by defendant indicates that such the reduction of the commission was agreed upon by the parties or that defendant properly notified plaintiff of such reduction in accordance with the terms of the 2000 Agreement. (*See id.*)

and 2001. Therefore, plaintiff's motion for partial summary judgment is due to be granted as to plaintiff's breach of contract claim for these unpaid commissions.

## B. Alabama Sales Representative's Commission Contracts Act

The Sales Representative's Commission Contracts Act ["SRCCA"], Ala. Code § 8-24-1, *et seq.*, provides protections for the payment of commissions to manufacturers' sales representatives. Plaintiff contends that it is entitled to three-times its unpaid commissions pursuant to Ala. Code § 8-24-3. Defendant opposes plaintiff's claim for treble damages and argues that plaintiff has failed to prove that it acted in bad faith, such that an award of "punitive damages" (in the form of treble damages) is appropriate.

Section 8-24-2 of the SRCCA provides commissions between a principal and its sales representative shall be paid when they are due. "A principal who fails to pay a commission as required by Section 8-24-2 is liable to the sales representative in a civil action for three times the damages sustained by the sales representative plus reasonable attorney's fees and court costs." Ala. Code § 8-24-3. The provisions of the SRCCA cannot be waived by express provision of the contract or "by any provision in a contract attempting to make the contract or agreement subject to the laws of another state." Ala. Code § 8-24-5.

The SRCCA clearly provides for the payment of treble damages as the remedy for unpaid commissions. The Act does not require a showing of intent or bad faith. All that a plaintiff is required to establish its entitlement to treble damages is the establishment of an agreement to pay a commission, failure to pay such commission in accordance with the terms of the agreement, and the amount of unpaid commissions. As set forth above, the court finds

that defendant failed to pay $326,242.26 in commissions; therefore, plaintiff's motion for summary judgment is due to be granted on its claim under the SRCCA. The court will enter an order awarding plaintiff $978,726.78, or three times its unpaid commissions.

## C. PLAINTIFF'S MOTION TO DISMISS

Plaintiff filed Motion to Dismiss, asking the court to dismiss its remaining claims for breach of contract and its claim for attorneys' fees, costs, and interest. The court finds that this motion is due to be granted and such claims are due to be dismissed. *See* Fed. R. Civ. P. 41(a)(2).

## IV. CONCLUSION

For all of the foregoing reasons, the court is of the opinion that there are no material facts in dispute and plaintiff is entitled to judgment as a matter of law on its claims for breach of contract and treble damages pursuant to the SRCCA, with regard to the unpaid commissions for sales to Siemens, CMC, and Adtran ($201,701.26) and the commissions withheld as "payback" deductions ($124,541). Plaintiff's remaining are due to be dismissed on plaintiff's motion. An order granting plaintiff's motion for partial summary judgment, (docs. 28), and a final judgment awarding plaintiff $978,726.78 will be entered contemporaneously with this Memorandum Opinion.

DONE this \_\_20th\_\_ day of September, 2002.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge